Good morning. May it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Ms. Gonzalez. I'd like to reserve one minute, if I could, for rebuttal. You may do so, Counsel. Thank you. The issue I'm going to address today is the issue of restitution. I believe the others are fully briefed. Counsel, would you please speak up? I'm sorry. I'm having trouble hearing you. Certainly, Your Honor. The problem in this case with the restitution issue is that both the Court and the probation officer in the PSR confused the concept of restitution with the concept of loss, although related. The concept of what? Loss. Loss. Guideline loss. Although related, in this case they were totally different. Here, the offense of conviction involved a scheme of bank fraud where Ms. Gonzalez took mail that into a credit union account. Now, also in this account were deposited checks from a separate scheme or transaction that was totally separate. These were checks made out to Starshield Armory that were stolen by someone else and also deposited in this account. Counsel, my notes indicate that the total loss was $69,900 and something. Is that right? That was the loss calculated for the guidelines. That's correct, Your Honor. All right. But the restitution order was for $53,458. Is that correct? That's correct. And your argument is that the restitution order should be reduced or eliminated entirely? Substantially reduced. It was based on the $53,000 was based on a total of 12 checks deposited in that credit union account. Now … Not all of those checks were cash? That's correct, Your Honor. It's hard to know which ones were. But what we do know about those 12 checks is that 10 of them were returned. That is, 10 of them, ultimately, the credit union debited that amount or did not credit that amount to the accounts. So, in essence, they weren't available for withdrawal. All right. What about the $24,000 that was remaining in the account? Are you suggesting that should be deducted as well? I'm not sure because if you really analyze it, the bulk of the loss and the bulk of the transactions in this case came from that very separate scheme. That was the Starshield Armory checks. So most of the money deposited in this account and most of the money withdrawn from the account came from the Starshield Armory checks. And the account was in the name of Starshield. So there was no apparent problem with those. On the other hand, the checks that are the subject of this case, the 12 checks from the nail, were presumably third-party checks, which obviously the credit union would place a hold on. The funds wouldn't be available immediately. And in most cases, 10 out of those 12 checks, the credit union ultimately rejected those checks and debited that money from her account. That's shown in papers submitted by the government. What do you think the restitution order should include? How much and for what? I think at most, there were two checks that were not returned, that were deposited in that account, that were available for withdrawal from funds. And they totaled about $9,800. All right. Are you saying that should be the total amount of restitution required? At the maximum, Your Honor. Counsel, what standard of review do we apply here? The government suggested it's been plain air, but if you look... Did you preserve an objection? There was an objection made. I guess it's a close question on whether the objection was preserved. Certainly, in the sentencing papers, defense counsel noted that she was objecting to the amount of restitution that's at government's excerpt of Record 57 on the same basis as she was objecting to the loss. Now, the parties have stipulated that the loss was $18,000 and some odd dollars. And they've also stipulated the restitution was $18,000 and some odd dollars, the exact same amount. Now, at sentencing, the district court reduced the loss amount from the $69,000 that the probation officer had suggested was the proper amount, which included the $53,000 that's at issue of the restitution, to the $18,000 that the parties had agreed to. Now, there was no discussion about likewise reducing the restitution. It was clear that the parties were sort of operating on the assumption that loss and restitution were sort of the same issue. And, of course, that is really not the case here. But I think it was an oversight. And it's not so much that the objection was waived. It was just sort of lost in the shuffle. So whether that's preserved or not, I think, is a close question. But in any case, even under a standard of plain error, it's clear that there is nowhere near the amount of loss for restitution purposes, as was ordered by the district court. So the thing that bothers me about this is the plea agreement. The plea agreement provided defendant agrees that the amount of restitution is not restricted to the amounts alleged in the count to which defendant is pleading guilty. It may include losses arising from counts dismissed and charges not prosecuted pursuant to this agreement, as well as all relevant conduct in connection with those counts and charges. The parties currently believe that the applicable amount of restitution is $18,340.31. But recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. That's correct, Your Honor. The $18,000 was based on four checks. The $53,000 was based on 12 checks that the PSR counted as relevant conduct. Now, the amounts we're disputing- The minimum that you would have to agree for restitution would be the $18,000. I said pursuant to the plea agreement. Perhaps, but that wording is, it says that they believe that's the amount. I mean, if it can go up, there's no, nothing that prevents it from going down as well. No one said this is the amount. They said we believe this is the amount. It can also go down. Okay, thank you. All right, thank you, counsel. You're going to reserve the remainder of the testimony. Yes. We'll hear from the government. Ms. Weyer. Good morning, and may it please the Court. My name is Jennifer Weyer, and I represent the United States. The restitution in this case was calculated correctly by the district judge. The district judge looked at the pre-sentence report, which noted that there were 12 checks. And as the defendant has admitted to this Court, these checks were part of a scheme where the defendant would steal from the United States mail letters and checks, take those checks, make them out to Star Shields, and deposit them into an account. And in this case, the loss with those 12 checks were $53,000, approximately $53,000. But what was the actual loss here, since some of those checks were not honored? How can we order restitution when there hasn't been an actual loss? All the checks were deposited into the account. And it wasn't until later on that the deposits were actually taken out. It wasn't as if the defendant came and submitted the checks, and the checks were not allowed to come in. They were all submitted into the account. And it's undisputed that the defendant deposited all 12 accounts and withdrew over $92,000. So you're saying there was no hold, she was allowed to withdraw, but later there were funds sufficient to recoup a return check. Exactly. And as the defendant has already admitted, all the funds in that account were illegal proceeds. The bank is out all of the money from the 12 checks that were deposited into the account. But was the money in the account just from this scheme, or was there another scheme she was involved in that accounted for part of the money in that account, which would involve restitution for the other scheme? But should we, since it was not an actual loss for this scheme, should that be counted? The other scheme is not relevant here, as because it's not charged. The scheme here was dealing with the mail. And what we have in this case is that she deposited all the accounts, the checks, got the benefit of the money in the account, and withdrew more than that amount in the account. So the bank in this case is out the money that she deposited. This is further supported by the fact that the parties agreed that the amount of loss was $18,000 at the time that the plea agreement was negotiated. And as this Court will know, two of those checks have similar, were also withdrawn later on in the scheme. And the defendant took responsibility for those two checks. And as this Court also pointed out, the restitution in the plea agreement was not limited to the four checks that were charged in the indictment. And as shown through the pre-sentence report and the evidence submitted by the government, there were nine more checks that were attributed to the mail fraud scheme. Any more questions on restitution? And just really quick, just to hit on one more point. The Court is correct that the appropriate standard of review for the restitution would be plain error. As stated at the sentencing hearing, the defendant said- I don't know that the Court made a ruling or any pronouncement. The Court asked a question. And I gather you feel it is plain error. Obviously, you've heard from opposing counsel that it's not. Help us sort that out. In the record at the sentencing hearing, the defendant's counsel stated, certainly my objection is not to the terms of restitution, and only argued about the appropriate payment. Never once did an objection, was an objection raised, and in fact, there was no objection because her objection was not to the terms of restitution. Thus, plain error would apply in that case. Moving on to the victim enhancement, as defense counsel has pointed out, this was a case of where a defendant stole from the United States mail to take checks and deposit them into a checking account. Therefore, her possession of stolen mail is relevant conduct under 1B1.3. The government presented evidence at the sentencing hearing to show that there were more than 50 victims, and therefore, the plus-4 enhancement was properly applied. Finally, the case- the 24-month sentence in this case was reasonable. Well, let me just ask about the number of victims. There were victims of crimes for which she was not convicted. Isn't that correct? That is correct. And the reason we can count them is? There's a couple of reasons in this case. One, we have 1B1.3, which is the relevant conduct provision of the United States sentencing guidelines. There it says that you can look to the same course of conduct or common scheme or plan. Moreover, in the plea agreement, it also states that it's not limited to the counts of conviction, and moreover, specifically in this plea agreement, the parties contemplated this exact enhancement being applied. Here, because the mail- the possession of stolen mail is part and parcel to the bank fraud, it is therefore- it therefore counts as relevant conduct. And you're arguing that the court made specific findings with respect to the number of victims and so forth? Yes, the court did look at the pre-sentence report. It noted that it looked at the pre-sentence report. It also looked at Exhibit G, which is also a- Exhibit G to the defense- to the government sentencing position, which showed the list of victims and what the mail was. And there was over 187 victims that have lost mail because of defendants' actions. Finally, the 24-month sentence is reasonable under Booker. The court in this case properly determined the guidelines, sentencing range, offense characteristics, and criminal history, and departed based on- and did a Booker variance based on the 3553 factors. Thank you, Counselor. Mr. Tanaka, you have some reserve time. Let's be clear about one thing. This account had two sources of funds, and the funds that were withdrawn by the defendant in this case came from the source that had nothing to do with this case. Although the government- How do we know that? Well, we know that for a couple reasons. One, the checks were returned. Although the government has just asserted that the funds were deposited and they were available for immediate withdrawal, there's certainly no evidence of that. And in fact, if you look at Government's Excerpt Record 132, which is the page that shows the deposit adjustments, and I don't expect anyone can sort this out now, but the checks and the dates there show that they were debited on the same day that they were deposited, which highly suggests that they weren't available for withdrawal. One question I have in that regard is, normally, I mean, the government argues that the funds were available. They were, in fact, drawn or available for withdrawal. And it doesn't count against or credit against the restitution by virtue of the fact even that you later have a return check, which the bank is luckily able to debit against the account. Normally, we do give credit. If there is a loss, let's say it's a $50,000 loss, and the bank nevertheless, and it's a fully recognized loss, the bank nevertheless gets a payment from the defendant, partial restitution outside the judgment or justice system, or it's able to recoup in some fashion, we normally give credit for that, I would think, in the restitution. But the question I have is, we would not give credit if the recoupment is from otherwise illegally obtained funds. I would agree with that, Your Honor, but analytically, it's a little different. There is no recoupment or credit. The issue really is whether there was any loss in the first place. If you, you know, I can't expect the court to do this. Did the bank sustain a loss? You heard counsel's point. Is that accurate or not? The bank sustained a loss, but in a sense, that's beside the point, because that loss resulted from the Starshield Armory fraud. If you track as best you can... But that's exactly my question. If the recoupment that the bank got was from other illegally obtained funds, we would normally not give credit to the defendant for that amount against restitution. Right, if it's a recoupment. The question is, though, did the bank lose any money with respect to the 12 checks that were deposited in this case? And your answer is, it didn't because it got money out of the Starshield fraudulently obtained funds. And there's no evidence that these funds were ever available for withdrawal. If you check, the count always has an adequate balance, or virtually always has an adequate balance, irrespective of these funds. So if these funds were never credited, it's possible that they could have exactly the same withdrawals. Now, I can't say that for certainty, but I think there needs to be certainly more evidence on that, because it certainly looks, from the evidence we have, that there was no loss except with respect to those two checks that they did credit. All the rest of them were ultimately not credited. And the question is, were those funds available for withdrawal? And the evidence looks like, no, they weren't. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in general anesthesia specialists versus per se technology.
judges: Dw Nelson, O'scannlain, Jones